Marshall C. DRAPER, et al., Plaintiffs,

v.

COLUMBUS PUBLIC SCHOOLS, et
al., Defendants.

No. C2–87–1421.

United States District Court,
S.D. Ohio.

March 21, 1991.

Walter Gene Brooks, Columbus, Ohio,
for plaintiffs.

Grey Wilbur Jones, Columbus, Ohio, for
defendants.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court on defendants' motion for summary judgment. In this 42 U.S.C. § 1983 case, all named defendants concede that they were acting under color of state law. Defendants also concede that plaintiff Marshall Draper suffered a deprivation of constitutionally protected liberty and property interests. Thus, the lone remaining issue is whether or not the state action in question violated Constitutional requirements for procedural due process. For the reasons detailed below, the Court finds as a matter of law that the applicable Constitutional standards were met. Accordingly, defendants' motion is GRANTED.

## FACTS

Plaintiff Marshall Draper was an eighth grade student at Mifflin Alternative Middle School at the time of the incident which precipitated this litigation. On October 29, 1987, Marshall allegedly threatened several other Mifflin students with a knife. This purportedly occurred just after school and just beyond the school yard, while the children were walking home.

The next day the school principal, Stephen Tankovich, heard the stories of each of the children who had been involved. After hearing Marshall Draper's story, Mr. Tankovich immediately notified Marshall's parents, Mr. and Mrs. Draper, that a hearing before a representative of the Superintendent of Columbus City Schools would be held October 30, 1987, for the purpose of

determining whether or not Marshall should be expelled from Mifflin.

At the October 30 hearing, Marshall Draper was expelled from Mifflin, with the provision that he could petition the Department of Pupil Personnel of the Columbus Public Schools for reinstatement on November 25, 1987. School Superintendent Damon Asbury posted a letter notifying the Drapers of the expulsion later that day. The Drapers then appealed this decision to the Columbus City School Board of Education.

November 12, 1987, an appeal was heard by Appellate Hearing Officer Ellen Wristen on behalf of the Columbus City School Board. Marshall Draper was there represented by his attorney in the present action, Walter G. Brooks. Ms. Wristen recommended that Marshall Draper's expulsion be affirmed. A report detailing Ms. Wristen's recommendation was mailed to Mr. Brooks on November 25, 1987. This report was affirmed by a unanimous vote of the Columbus City School Board on December 1, 1987. Notice of the School Board's final decision was posted to Mr. Brooks on December 3, 1987.

In the meanwhile, on November 20, 1987, a letter was posted to Mr. and Mrs. Draper from the Columbus Public Schools Department of Pupil Personnel, which operates under the authority of the Superintendent of Columbus City Schools. This letter informed the Drapers that Marshall was being re-assigned to Champion Alternative Middle School. Marshall began classes at Champion on November 30, 1987. He has since completed the curriculum at Champion, and is currently in high school.

November 25, 1987, a complaint was filed by Marshall Draper and his parents in the United States Court for the Southern District of Ohio, Eastern Division. The complaint alleges the violation of Marshall's due process rights, and invokes federal jurisdiction pursuant to 42 U.S.C. § 1983. Named defendants include Columbus Public Schools, the Board of Education, Mifflin Alternative Middle School, and various personnel within these entities.

## STANDARD OF REVIEW

In considering this motion, the Court is mindful that the standard for summary judgment "mirrors the standard for a directed verdict under [Rule 50(a)], which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) citing *Brady v. Southern Ry. Co.,* 320 U.S. 476, 479–80, 64 S.Ct. 232, 234–35, 88 L.Ed. 239 (1943). Thus, the Supreme Court concluded in *Anderson* that a judge considering a motion for summary judgment must "ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." 477 U.S. at 252, 106 S.Ct. at 2512.

Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In essence, the inquiry is whether the evidence presented a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

Such an inquiry necessarily implicates the evidentiary standard of proof that would apply at the trial on the merits. As a result, the Court must view the evidence presented through the prism of the substantive evidentiary burden. Rule 56(e) therefore requires that the nonmoving party go beyond the pleadings and by their own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The plain language of Rule 56(c) mandates

the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

In *Banks v. Rockwell International N. Am. Aircraft Operations*, 666 F.Supp. 1053 (S.D.Ohio 1987) (J. Graham), this district enunciated the importance of granting summary judgments in appropriate situations by stating that: "Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed to secure the just, speedy and inexpensive determination of every action." *citing, Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553, (quoting Fed.R.Civ.P. 1) *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

Thus, the mere existence of a scintilla of evidence in support of a plaintiff's claim is insufficient—there must be evidence upon which a jury could reasonably find for the plaintiff. Having discussed the Rule 56 standard of review, the Court now turns to the merits.

## LAW AND ANALYSIS

■ The liberty and property interests of which Marshall Draper was deprived mirror those of the plaintiffs in *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Although there is no fundamental right to a free public education, Ohio has chosen to extend free education to a defined class of persons. Accordingly, an individual falling within that group has a property interest in a legitimate government entitlement which cannot be taken from him without due process of law. *Id.* at 574, 95 S.Ct. at 736. Marshall Draper is a member of the class to which Ohio offers an education, therefore he has a property interest at stake.

■ *Goss* also defines a liberty interest in "a person's good name, reputation, honor, or integrity." *Id.* at 574, 95 S.Ct. at 736. The permanent school record of a juvenile's suspension on charges of misconduct impairs a juvenile's reputation by lowering his esteem in the eyes of fellow pupils, teachers, and others who might afford education or employment opportunities to the child in the future. *Id.* at 574–75, 95 S.Ct. at 736–37. Under this rationale, the expulsion of Marshall Draper clearly impacted his liberty interest in his good name.

■ Having determined that the Plaintiff possesses liberty and property interests in his public education, it follows that any state action tending to deprive him of these interests must comply with the due process requirements of the fourteenth amendment. This leads to the next step in our analysis, for "[o]nce it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

When government deprives a party of a protected interest, "[t]he fundamental requisite of due process law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914). In order to exercise one's right to be heard, it stands to reason that a party must first receive notice of the impending hearing and of its subject matter. The right to a hearing "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to ... contest." *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

■ The types of notice and hearing needed to conform with constitutional due process requirements vary with the practical necessities of disparate cases. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. at 481, 92 S.Ct. at 2600. The format required in an individual case must be arrived at by measuring both the interest of the person whose rights are at stake and the competing state interest. *Id.*

■ In the case at bar, Marshall Draper's interest in his reputation and his uninterrupted education must be balanced against the state interest in maintaining safe, orderly, and effective public schools.

The greatest guidance in construing the constitutional requirements of due process for these competing interests is that offered by the Supreme Court in *Goss v. Lopez, supra.* Although the Court in *Goss* ruled on due process requirements for a student suspension, and the instant case deals with an expulsion, the reasoning is nonetheless particularly appropriate for application to these facts. The nature of the interests of both competing parties are essentially the same in this case as those of the parties in *Goss.* In addition, the notion that expulsion is a greater violation of the plaintiff's liberty and property interests than is suspension has been greatly mitigated in this case by the re-instatement of Marshall Draper into the Columbus Public School System after only twenty-seven days.

In *Goss,* the Court proclaims that due process requires, "for a suspension, ... the student [must] be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581, 95 S.Ct. at 740. This process is described as necessary to insure "rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school." *Id.* at 581, 95 S.Ct. at 740.

Marshall Draper was given not one, but several opportunities to be heard. First, he was allowed to present his story to Principal Tankovich in an informal hearing. Written notice was sent to the Drapers of a more formal hearing to be held before an officer of the school system superintendent the next day. The Drapers were invited to attend and be heard. The Drapers were provided by the Superintendent with a letter informing them of the results of this hearing, of their right to appeal the decision to the School Board, and of their right to counsel. Their attorney filed the notice of appeal, took part in scheduling the hearing date, and was present at the appellate hearing. It was only after their dissatisfaction with the result of this third hearing that the Drapers filed legal action asserting a denial of due process.

The process due in order to assure rudimentary precautions against unfair or mistaken findings for a 10 day suspension, as delineated in *Goss,* is merely notification of the charges and an opportunity to contest them at an informal hearing. *Id.* In the instant case, Marshall Draper was expelled for a period specified at its inception to be 27 days (see 10/30/87 letter from Damon Asbury to Mr. and Mrs. Draper). For the added penalty of what amounts to 17 extra days of separation from school and the transfer of institutions, in effect, Marshall Draper was granted two formal hearings and the representation of counsel. On its face, the additional process afforded to the Drapers in this action is more than adequate to offset the stiffer punishment. Surely sufficient steps were taken to minimize the possibility of unfair or mistaken findings of fact resulting in an arbitrary exclusion from school. *Goss v. Lopez,* 419 U.S. at 581, 95 S.Ct. at 740.

In reaching a decision in this case, this Court has been mindful of the Supreme Court's following admonition:

> Given the fact that there *was* evidence supporting the charge, ... [i]t is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion.... [S]tudents do have substantive and procedural rights while at school.... But § 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings.... The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and § 1983 was not intended to be a vehicle for federal-court corrections of errors in the exercise of that discretion which do not rise to the level of specific constitutional guarantees. *Wood v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975).

## CONCLUSION

Accordingly, this Court finds that as a matter of law, the plaintiffs have failed to

make a showing sufficient to establish an element essential to their case. The Drapers have not met their burden of producing evidence tending to prove that the procedural process due to Marshall under the due process clause of the 14th Amendment was denied. The allegation of a lack of procedural due process was the essence of the plaintiffs' 42 U.S.C. § 1983 claim, as well as an integral part of their *prima facie* case. Furthermore, it is the opinion of this court that the Columbus Public School System and its component branches have, in this instance, met the constitutional requirements for due process.

Wherefore, upon being duly advised, the motion for summary judgment on behalf of all named defendants is GRANTED, and the plaintiffs' claims are DISMISSED.

IT IS SO ORDERED.